IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0608-WJM-KAS
*Consolidated with Civil Action No. 22-cv-1358-WJM-KAS*

SUZY DENNIS,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
PAUL PAZEN, in his individual capacity,
CITY OF ARVADA,
CITY OF GOLDEN,
JOHN AND JANE DOES 1–5, in their individual capacities,
JEFF SHRADER, in his official capacity,
ANTHONY BROWN, in his individual capacity,
GEOFFREY VOGEL, in his individual capacity,
NATHANIEL NEDIG,[1] in his individual capacity,
TIMOTHY STEGINK, in his individual capacity,
MICHAEL PITTON, in his individual capacity,
ANTHONY HAMILTON, in his individual capacity,
JORDAN BYBEE, in his individual capacity,
RYAN COLLEY, in his individual capacity, and
DEAN MORETTI, in his individual capacity,

    Defendants.

## ORDER GRANTING MUNICIPAL DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Suzy Dennis sues three Colorado municipalities, Jefferson County (in the form of an official-capacity suit against its sheriff, Jeff Shrader), and numerous law enforcement officers for violations of her First, Fourth, and Fourteenth Amendment rights. (ECF Nos. 80, 82.) There are currently seven pending motions to dismiss in this

---

[1] The Court observes that Nathaniel Nedig's last name is properly spelled "Neidig." (ECF No. 97 at 1.)

consolidated action.  (ECF Nos. 83, 90, 91, 92, 94, 97, 99.)  Before the Court are the three motions (collectively, "Motions") filed by the City of Golden ("Golden"), the City and County of Denver ("Denver"), and Jefferson County Sheriff Jeff Shrader ("Shrader") ("Municipal Defendants")[2]:

- Golden's Motion to Dismiss Third Amended Complaint (ECF No. 90) ("Golden Motion");

- Defendant Denver's Motion to Dismiss (ECF No. 91) ("Denver Motion"); and

- Jefferson County Sheriff Jeff Shrader's Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 94) ("Shrader Motion").

For the reasons explained below, the Motions are granted.

## I. LEGAL STANDARDS

**A.    Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy

---

[2] While the City of Arvada ("Arvada") is also a defendant in this action, rather than file a motion to dismiss, Arvada filed an answer.  (ECF No. 89.)  For purposes of this Order, Arvada is not included in the term "Municipal Defendants."

2

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND[3]

In the summer of 2020, and in the wake of the murder of George Floyd, millions of Americans gathered in cities across the country to protest police brutality. (ECF No. 80 at 4–5, ¶¶ 12–14.) On May 28, 2020, protesters gathered in downtown Denver and continued their demonstration for several following days and nights. (*Id.* at 5, ¶ 14.) In response, Denver instituted a city-wide curfew order from May 30 through June 5, 2020. (*Id.* at 5, ¶16.) The curfew prohibited all persons from "using, standing, sitting, traveling, or being present on any public street or in any public place, including for the purpose of travel," with limited exceptions. (*Id.* at 5–6, ¶ 17.)

In addition to the curfew, Paul Pazen, then-Chief of the Denver Police Department, opened a "command post" and appointed an incident commander to direct officer resources and approve use of force. (*Id.* at 6, ¶ 18.) This curfew was selectively enforced against protesters with the assistance of mutual-aid officers from multiple municipalities and counties in the Denver metropolitan area. (*Id.* at 6, ¶¶ 19–21.) As

---

[3] The following factual summary is drawn from the Third Amended Complaint (ECF No. 80), except where otherwise stated. The Court assumes the allegations in the two operative complaints are true for the purposes of deciding the Motion to Dismiss. *See Ridge at Red Hawk*, 493 F.3d at 1177. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

part of their protest crowd-control efforts, Denver and mutual-aid officers employed "less-lethal" munitions against peaceful protestors indiscriminately and without provocation.  (*Id.* at 6–7, ¶¶ 23–27.)  Despite many protestors having already been injured by these less-lethal munitions, on May 29, 2020, Michael Hancock (Denver's then-Mayor) and Pazen publicly praised Denver and mutual-aid officers for their "great" and "tremendous restraint" in use of force against protestors.  (*Id.* at 7–8, ¶ 30.)

On May 31, 2020, Plaintiff was walking down Colfax Avenue during the hours in which the curfew was in effect when she came across an active but peaceful and non-violent protest.  (*Id.* at 18, ¶¶ 94–95.)  She then decided to stand with and film the protesters.  (*Id.* at 18, ¶ 95.)  Within minutes of Plaintiff joining the protest, law enforcement officers began spraying tear gas, throwing flashbang grenades, and shooting rubber bullets at the protestors, including Plaintiff.  (*Id.* at 18, ¶ 96.)  Suddenly and without warning, Plaintiff's hand was hit by an unknown projectile that knocked her phone out of her hand, injuring her right index finger and leaving bone visibly exposed.  (*Id.* at 18, ¶ 97.)  At first, Plaintiff believed her finger had been "shot clean off."  (*Id.* at 18, ¶ 98.)  Plaintiff's injury is "consistent with being hit with a rubber bullet."  (*Id.* at 18, ¶ 101.)

## III. ANALYSIS

A local government unit can be liable for damages under 42 U.S.C. § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 694 (1978).  The Supreme Court has thus "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal

'policy' or 'custom' that caused the plaintiff's injury," thereby "ensur[ing] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," rather than holding the municipality liable simply because it employed a constitutional wrongdoer.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997).

> The relevant policy or custom can take several forms, including:
>
>> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted; alterations incorporated).  But, whatever species of policy or custom is alleged,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan Cnty.*, 520 U.S. at 404 (emphasis in original).

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must

5

demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770–71 (10th Cir. 2013) (quoting *Bryan Cnty.*, 520 U.S. at 407).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]

*Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). The Tenth Circuit explains that "the prevailing state-of-mind standard for a municipality is deliberate indifference regardless of the nature of the underlying constitutional violation." *Id.* at 770 n.5 (citing Martin A. Schwartz, Section 1983 Litigation Claims & Defenses at § 6.02[C] (2013) ("Since the decision in [*City of Canton v. Harris*, 489 U.S. 378, 389 (1989)] [adopted deliberate indifference for training claims], deliberate indifference has become the prevailing standard for other types of municipal liability claims as well. . . . [W]hen a § 1983 claimant seeks to impose municipal liability she must normally show deliberate indifference."); Schwartz § 7.07 ("The deliberate indifference standard has . . . played a pervasive role in the law of § 1983 municipal liability.")).

**A.    Plaintiff Must Show Each Municipality Acted with Deliberate Indifference Regardless of Which Theory of Liability She Asserts**

Each of the Motions argues Plaintiff must plausibly plead the following elements to survive a Rule 12 motion: (1) the existence of a policy or custom; (2) a causal link

6

between the policy or custom and the constitutional injury; and (3) the municipality's deliberate indifference.  (ECF No. 90 at 5; ECF No. 91 at 3; ECF No. 94 at 5.)  In her responses to the Motions, Plaintiff includes three substantially identical footnotes arguing the Municipal Defendants have improperly stated the law.  (ECF No. 102 at 4 n.1; ECF No. 104 at 4 n.2; ECF No. 106 at 4 n.2.)  In one such footnote, she writes:

> Defendant Sheriff (like Golden Defendant) incorrectly claims that a third element of "deliberate indifference" exists for all theories of municipal (or *Monell*) liability, citing *Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760, 769 (10th Cir. 2013).  However, *Waller,* which was decided after that case, clarified that *'deliberate indifference'* is only a necessary element to municipal liability predicated on failure to train or inadequate hiring theories.  *See Waller*, 932 F.3d at 1284; *see also Epps*, No. 1:20-CV-01878-RBJ, 2022 WL 605739, at *5 n.4 ("Deliberate indifference is required only for municipal liability based upon a failure to adequately train or supervise.")

(ECF No. 106 at 4 n.2.)

*Schneider* speaks unequivocally of the "three elements" of municipal liability.[4]  717 F.3d 760.  Many frequently cited cases have happened to be failure to train cases.

---

[4] *In Trujillo v. City & Cnty. of Denver*, the undersigned stated in *dicta* that the distinction between an unwritten policy or custom theory and a failure to train theory of municipal liability is "potentially significant because a failure to train theory requires proof of deliberate indifference, whereas a policy/custom theory does not."  2017 WL 1364691, at *4 (D. Colo. Apr. 14, 2017).  The Court read *Connick v. Thompson*, 563 U.S. 51 (2011), *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Bryson*, as suggesting this distinction but did "not distinguish Trujillo's two possible theories" because it found he had plausibly alleged deliberate indifference.  *Trujillo*, 2017 WL 1364691, at *4.  Nor did the parties cite *Schneider* for the proposition that all *Monell* claims have a state of mind element, regardless of which theories are used to show the policy or custom element of municipal liability.

Nevertheless, the Court's application of *Schneider* in this case is consistent with how the Court generally approaches the municipal liability analysis.  It also reflects the manner in which the Tenth Circuit approaches municipal liability following *Bryan County*. *See, e.g.*, *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1235 (10th Cir. 2020) (allegations of a policy or custom of unlawful strip searches also require plaintiff to allege state of mind element).

*See, e.g., City of Canton*, 489 U.S. 378 (failure to train); *Bryan Cnty.*, 520 U.S. 397 (inadequate hiring); *Schneider*, 717 F.3d 760 (inadequate hiring and failure to train); *Bryson*, 627 F.3d 784 (failure to train).  In recent cases, however, the Tenth Circuit has required plaintiffs to meet all three elements (notably including the "state of mind" element articulated in *Schneider*) in cases not predicated on a failure to train theory. *See, e.g., Finch v. Rapp*, 38 F.4th 1234 (10th Cir. 2022) (informal custom); *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204 (10th Cir. 2020) (formal policy and informal custom). Therefore, the Court finds the Municipal Defendants have a better reading of the current state of the law in the Tenth Circuit on this issue.

**B.     Golden Motion**

With respect to an official policy or custom, Golden identifies three potential theories in the Third Amended Complaint: formal policy, informal custom, and failure to train.  (ECF No. 90 at 6.)  Plaintiff does not dispute this characterization.  (*See generally* ECF No. 104.)  Plaintiff argues that Golden was deliberately indifferent to the consequences of its deficient training, however, she fails to make any argument whatsoever on how the allegations in the Third Amended Complaint plausibly allege Golden's deliberate indifference with respect to other theories.  (*Id.* at 6.)  Therefore, the Court considers only whether Plaintiff has plausibly alleged municipal liability against Golden on a failure to train theory.

Plaintiff asserts she has plausibly alleged Golden's deliberate indifference because a pattern of tortious conduct committed by mutual-aid officers had developed over "**SEVERAL DAYS** before Plaintiff was injured."  (ECF No. 104 at 7.)  This allegation, according to Plaintiff, also shows that the injury Plaintiff sustained was "a highly predictable and plainly obvious consequence of Golden's . . . failure[] in training

8

and supervision." (*Id.*)  This argument conflates two independent factual circumstances under which a municipality can be put on notice that its action or inaction is substantially certain to result in a constitutional violation.  *See Hinkle*, 962 F.3d at 1241 ("While typically notice is 'established by proving the existence of a pattern of tortious conduct,' it can also be established 'in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'") (quoting *Barney*, 143 F.3d at 1307).

Further, notice is just one part of the deliberate indifference analysis—a plaintiff must also show that the municipality consciously or deliberately disregarded the risk of harm.  *Id.* (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019)).  Even assuming notice, it is not enough to simply point out that Plaintiff was in fact injured and presume that Golden ignored the risk.  Golden may have taken steps to mitigate the risk to Plaintiff and other protesters, but the additional training was simply ignored.  While this obviously implicates causation, it also highlights the utter lack of allegations in the Third Amended Complaint relevant to deliberate indifference.[5]

"'[D]eliberate indifference' is a stringent standard of fault," and Plaintiff's allegation that similar injuries had occurred over the preceding days, standing alone, cannot meet this high standard.  *Bryan Cnty.*, 520 U.S. at 410.  Therefore, the Court finds Plaintiff has failed to allege a plausible claim for municipal liability against Golden.

---

[5] What few allegations the Third Amended Complaint does contain that relate to Golden's deliberate or conscious disregard of the known risk to Plaintiff are either legal conclusions or do not specifically identify what *Golden* did.  (*See* ECF No. 80 at 13, ¶¶ 64–65; *id.* at 14, ¶ 68; *id.* at 20, ¶ 105.)  Such allegations are insufficient to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679–680 (2009).

**C. Shrader Motion**

Plaintiff's allegations with respect to Shrader's deliberate indifference are similarly sparse. And Plaintiff's argument is similarly deficient.

As Shrader points out, Plaintiff appears to take the position in her response that the Third Amended Complaint alleges municipal liability on the basis of all five available theories—though she refers to these different theories as "prong[s]." (ECF No. 106 at 6; ECF No. 123 at 3.) In any event, as the Court has already explained, whatever theory Plaintiff puts forth to allege the policy or custom element, she must still allege both causation and state of mind. *See supra*, Part III.A. Plaintiff's sole argument on Shrader's mental state is that she "has alleged that the Sheriff's overt policy of not requiring [body-warn cameras] to be on and allowing delayed use of force reporting directly and deliberately led to officers' Constitutional violations because they believed they would not be held accountable for their actions." (ECF No. 106 at 7.)

The Court has reviewed every allegation in the Third Amended Complaint containing the words "camera," "report," and "delay." After this review, the most relevant allegations it could find are paragraphs 38 and 39:

> 38. During its investigation, [Denver's Office of the Independent Monitor] found that [Denver Police Department] did not create sufficient officer rosters for the demonstrations prior to June 1, 2020 and did not require officers to prepare use of force reports until after a lawsuit was filed against them in *Abay v. City and County of Denver,* 20-cv-1616-RBJ. This created weeks-long delays in use of force reporting from the protests despite Denver and mutual-aid defendants being aware that timely use of force reporting, along with the use of body worn cameras, increases accountability and transparency and incentivizes proper officer conduct.
>
> 39. Gaps in DPD's and mutual-aid defendants' policies also did not require officers from DPD or mutual-aid agencies to wear body word [*sic*] cameras which resulted in

> a substantial number of officers participating in the protests
> without having their actions documented, allowing them to
> avoid accountability for their actions.

(ECF No. 80 at 8, ¶¶ 38–39.) As is apparent from paragraph 38, Plaintiff alleges that *Denver* did not require law enforcement officers to prepare timely use of force reports. (*Id.* at 8, ¶ 38 ("DPD . . . did not require officers to prepare use of force reports until after a lawsuit was filed.").) The second sentence of paragraph 38 lacks specificity, but even if the Court ignores its generic nature, this sentence at most alleges that Shrader was on notice that certain practices improve police accountability. (S*ee id.*) None of the allegations related to body-worn cameras or use of force reports have anything to say about Shrader's deliberate or conscious disregard for the consequences of these policies. (*See generally* ECF No. 80.) Moreover, as Shrader and other Municipal Defendants point out, Colorado law did not require law enforcement agencies to equip officers with body-worn cameras until July 1, 2023.[6] (ECF No. 94 at 10.)

Accordingly, the Court finds Plaintiff has failed to allege a plausible municipal liability claim against Shrader.

**D.     Denver Motion**

Like the other Municipal Defendants, Denver analyzes Plaintiff's *Monell* claim against it under a three-element test. (ECF No. 91 at 3; ECF No. 115 at 2–3.) Of the Municipal Defendants, Denver is the subject of by far the greatest number of specific allegations. (*See generally* ECF No. 80.) Nevertheless, Denver argues Plaintiff has

---

[6] *Epps v. City and County of Denver* is easily distinguishable. In that case, the court found that Denver's alleged policy of "permitting officers to deactivate body worn cameras" could form the basis of a *Monell* claim because it allegedly "notified officers that they likely would not be held accountable for excessive uses of force and thus caused them to use excessive force." 588 F. Supp. 3d 1164, 1175 (D. Colo. 2022). Failing to enforce body-worn camera use or discipline officers when they deactivate provided body-worn cameras is simply not the same as failing to provide such cameras at all in the first instance.

11

failed to show deliberate indifference under any theory of municipal liability.  (ECF No. 91 at 3, 5, 10; ECF No. 115 at 2–3.)  As with her responses to Golden and Shrader's motions, Plaintiff simply fails to meet this challenge with respect to any theory other than failure to train.[7]  (*See* ECF No. 102 at 8.)

Worse still, despite having the benefit of substantially more specific allegations relating to Denver, Plaintiff's argument on deliberate indifference is a near carbon copy of the confused argument Plaintiff made with respect to Golden.  (*Compare* ECF No. 102 at 8, *with* ECF No. 104 at 7.)  The Court has already explained how this argument misses the mark.   *See supra*, Part III.A.

Legal analysis aside, Plaintiff has not done herself any favors in how she has structured her response briefs.  For instance, the "Argument" section of her response to the Denver Motion is approximately four pages long.  (*See* ECF No. 102 at 5–9.)  Those pages contain a scant three citations, all of which are to case law.  (*See id.*)  The only factual citations in the entire response are in a separate "Allegations in Complaint" section comprised of perhaps the longest single sentence the Court has ever seen; spanning one-and-a-half pages, by the Court's count, it is 409 words long.  (*Id.*)  In essence, though perhaps not in form, this section is merely a bullet point list of certain allegations in the Third Amended Complaint, and neither this section nor Plaintiff's Argument section explain how these allegations establish the elements of her claim.  And while the Court has used the response to the Denver Motion as a specific example,

---

[7] Plaintiff asserts that "[r]egardless, [of whether mental state is an element of *Monell* claims predicated on theories other than failure to train,] Plaintiff has plausibly alleged Denver was deliberately indifferent in all of its conduct at issue in this case."  (ECF No. 102 at 4 n.1.)  Despite this sweeping language apparently previewing an argument on deliberate indifference on multiple theories, Plaintiff simply fails to follow through.  (*See id.* at 5–9.)

her responses to the Golden and Shrader Motions follow a similar form, substituting the Allegations in Complaint section for "General Response" sections that—mercifully—contain more than a single period. (*See* ECF No. 104 at 1–3; ECF No. 1–3.) Put mildly, this structure is unhelpful.

Turning to the substance of the allegations relating to Denver's alleged deliberate indifference to the consequences of inadequate training, the Court finds the following allegations relevant:

- Denver did not conduct joint training exercises with mutual-aid officers prior to responding to the protests (ECF No. 80 at 10, ¶ 45; *id.* at 11, ¶¶ 53–54);
- Denver did not require officers to prepare use of force reports until after a lawsuit was filed (*id.* at 9, ¶ 38);
- Denver did not train (or require mutual-aid officers to have been trained) to keep their body-worn cameras on (*id.* at 9, 39); and
- That Denver and mutual-aid officers developed a pattern of using less-lethal munitions on peaceful protesters over the course of several days prior to May 31, 2020, when Plaintiff sustained her injuries (*id.* at 6–7, ¶¶ 23–29).

These allegations are insufficient to show deliberate indifference to inadequate training. A handful of days is simply not a long enough pattern of tortious conduct to infer Denver's knowledge. Plaintiff baldly asserts that "a violation of [her] and the other injured protesters' constitutional rights were a *highly predictable* and *plainly obvious* consequence of Denver's failures in training and supervision of its officers' tactics"

(emphasis in original) because "[p]rotests against police brutality were almost a guarantee in 2020, even before George Floyd's murder." (ECF No. 102 at 8.) But she does nothing to support this claim either via attorney argument or citation to facts alleged in the Third Amended Complaint. (*Id.*) Therefore, this action stands in stark contrast with cases where the Tenth Circuit has found notice on the basis that constitutional violations were the highly predictable and plainly obvious consequence of municipal policy or custom. *See Allen v. Muskogee*, 119 F.3d 837, 839, 843–45 (10th Cir. 1997) (failure to train); *Hinkle*, 962 F.3d at 1241–42 (formal policy and informal custom).

Accordingly, the Court finds Plaintiff has failed to state a plausible municipal liability claim against Denver.

### E.  Dismissal with Prejudice

Because Plaintiff has already made four unsuccessful attempts to plead plausible claims, the Court concludes further amendment would be futile. Therefore, the Court dismisses the claims against Golden, Shrader, and Denver with prejudice. *See Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court ORDERS as follows:

1. Golden's Motion to Dismiss Third Amended Complaint (ECF No. 90) is GRANTED;
2. Defendant Denver's Motion to Dismiss (ECF No. 91) is GRANTED
3. Jefferson County Sheriff Jeff Shrader's Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 94) is GRANTED;

4. Because Plaintiff has had four opportunities to plead plausible claims, the Third Amended Complaint (ECF No. 80) is DISMISSED WITH PREJUDICE as to Golden, Denver, and Shrader; and

5. Golden, Denver, and Shrader will be entitled to judgment in their favor and against Plaintiff at such time as the Clerk enters final judgment on all claims of all parties in this consolidated action.

Dated this 11th day of September, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge