**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-0608-WJM-KAS
*Consolidated with Civil Action No. 22-cv-1358-WJM-KAS*

SUZY DENNIS,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
PAUL PAZEN, in his individual capacity,
CITY OF ARVADA,
CITY OF GOLDEN,
JOHN AND JANE DOES 1–5, in their individual capacities,
JEFF SHRADER, in his official capacity,
ANTHONY BROWN, in his individual capacity,
GEOFFREY VOGEL, in his individual capacity,
NATHANIEL NEDIG,[1] in his individual capacity,
TIMOTHY STEGINK, in his individual capacity,
MICHAEL PITTON, in his individual capacity,
ANTHONY HAMILTON, in his individual capacity,
JORDAN BYBEE, in his individual capacity,
RYAN COLLEY, in his individual capacity, and
DEAN MORETTI, in his individual capacity,

    Defendants.

---

**ORDER RULING ON INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS**

---

    Plaintiff Suzy Dennis sues three Colorado municipalities, Jefferson County (in the form of an official-capacity suit against its sheriff, Jeff Shrader), and numerous law enforcement officers for violations of her First, Fourth, and Fourteenth Amendment rights.  (ECF Nos. 80, 82.)  There are currently seven pending motions to dismiss in this

---

[1] The Court observes that Nathaniel Nedig's last name is properly spelled "Neidig." (ECF No. 97 at 1.)

consolidated action.  (ECF Nos. 83, 90, 91, 92, 94, 97, 99.)  Before the Court are the four motions (collectively, "Motions") filed by the named law enforcement officers ("Individual Defendants"):

- Defendants Timothy Stegink, Michael Pitton, Anthony Hamilton, Jordan Bybee, and Ryan Colley's Motion to Dismiss Complaint and Jury Demand (ECF No. 83) ("Deputy Sheriffs Motion");
- Defendant Pazen's Motion to Dismiss (ECF No. 92) ("Pazen Motion");
- Defendants Nathaniel Neidig, Geoffrey Vogel, and Dean Moretti's Motion to Dismiss (ECF No. 97) ("Arvada Officers Motion"); and
- Defendant Anthony Brown's Motion to Dismiss Complaint and Jury Demand (ECF No. 99) ("Brown Motion").

For the reasons explained below, the Deputy Sheriffs, Arvada Officers, and Brown Motions are granted, and the Pazen Motion is granted in part and denied in part.

## I. LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy

2

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### B. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once the qualified immunity defense is raised, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the relevant time. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Id.* (internal quotation marks omitted). Nonetheless, the clearly established prong

> involves more than a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less

> specificity is required from prior case law to clearly establish the violation. The Supreme Court has cautioned [lower] courts not to define clearly established law at a high level of generality, but to focus on whether the violative nature of particular conduct is clearly established.

*Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citations omitted).

## II. BACKGROUND[2]

In the summer of 2020, and in the wake of the murder of George Floyd, millions of Americans gathered in cities across the country to protest police brutality. (ECF No. 80 at 4–5, ¶¶ 12–14.) On May 28, 2020, protesters gathered in downtown Denver and continued their demonstration for several following days and nights. (*Id.* at 5, ¶ 14.) In response, Denver instituted a city-wide curfew order from May 30 through June 5, 2020. (*Id.* at 5, ¶16.) The curfew prohibited all persons from "using, standing, sitting, traveling, or being present on any public street or in any public place, including for the purpose of travel," with limited exceptions. (*Id.* at 5–6, ¶ 17.)

In addition to the curfew, Paul Pazen, then-Chief of the Denver Police Department, opened a "command post" and appointed an incident commander to direct officer resources and approve use of force. (*Id.* at 6, ¶ 18.) This curfew was selectively enforced against protesters with the assistance of mutual-aid officers from multiple municipalities and counties in the Denver metropolitan area. (*Id.* at 6, ¶¶ 19–21.) As part of their protest crowd-control efforts, Denver and mutual-aid officers employed

---

[2] The following factual summary is drawn from the Third Amended Complaint (ECF No. 80) and the Complaint and Jury Demand (ECF No. 82), except where otherwise stated. The Court assumes the allegations in the two operative complaints are true for the purposes of deciding the Motion to Dismiss. *See Ridge at Red Hawk*, 493 F.3d at 1177. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

4

"less-lethal" munitions against peaceful protestors indiscriminately and without provocation.  (*Id.* at 6–7, ¶¶ 23–27.)  Despite many protestors having already been injured by these less-lethal munitions, on May 29, 2020, Michael Hancock (Denver's then-Mayor) and Pazen publicly praised Denver and mutual-aid officers for their "great" and "tremendous restraint" in use of force against protestors.  (*Id.* at 7–8, ¶ 30.)

On May 31, 2020, Plaintiff was walking down Colfax Avenue during the hours in which the curfew was in effect when she came across an active but peaceful and non-violent protest.  (*Id.* at 18, ¶¶ 94–95.)  She then decided to stand with and film the protesters.  (*Id.* at 18, ¶ 95.)  Within minutes of Plaintiff joining the protest, law enforcement officers began spraying tear gas, throwing flashbang grenades, and shooting rubber bullets at the protestors, including Plaintiff.  (ECF No. 82 at 5, ¶ 20.)  Suddenly and without warning, Plaintiff's hand was hit by an unknown projectile that knocked her phone out of her hand, injuring her right index finger and leaving bone visibly exposed.  (*Id.* at 5, ¶ 20.)  Immediately after, Plaintiff turned around and began walking in the other direction when she was struck in the chest, again by an unknown projectile.  (*Id.* at 6, ¶ 23.)  Plaintiff's injuries are "consistent with being hit with a rubber bullet."  (*Id.* at 7, ¶ 27.)

Timothy Stegink, Michael Pitton, Anthony Hamilton, Jordan Bybee, Ryan Colley, and Anthony Brown are Jefferson County Deputy Sheriffs who assisted Denver as mutual-aid officers.  (ECF Nos. 83, 99.)  Nathaniel Neidig, Geoffrey Vogel, and Dean Moretti are Arvada Police Department officers who assisted Denver as mutual-aid officers.  (ECF No. 97.)  Plaintiff alleges "[o]n information and belief, one or more of [them] shot [her], causing injury."  (ECF No. 82, ¶ 24.)

## III. ANALYSIS

The Individual Defendants raise numerous issues with the two operative complaints, which they assert entitle them to judgment as a matter of law. Critical to the Court's disposition of the Motions, each of the Individual Defendants asserts that Plaintiff has failed to sufficiently plead personal participation in the events underlying her claims. (ECF No. 83 at 3–5; ECF No. 92 at 4–9; ECF No. 97 at 3–5; ECF No. 99 at 2.) Because Plaintiff asserts supervisory liability against Pazen, the Court addresses him separately.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009); *see also Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Because 42 U.S.C. § 1983 is a "vehicle[] for imposing personal liability on government officials, [the Tenth Circuit] ha[s] stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). For this reason, "it is particularly important" that "the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original); *accord Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

A.     **Mutual-aid Officers**[3]

The Mutual-aid Officers belonged to two different constituent law enforcement agencies.  Timothy Stegink, Michael Pitton, Anthony Hamilton, Jordan Bybee, Ryan Colley, and Anthony Brown are current and former Jefferson County Deputy Sheriffs. (ECF No. 83 at 1; ECF No. 99 at 1.)  Nathaniel Neidig, Geoffrey Vogel, and Dean Moretti are officers in the Arvada Police Department.  (ECF No. 97 at 1.)  Each of these Defendants are named only in Plaintiff's later-filed action.  (*See* ECF No. 80; ECF No. 82.)  Therefore, the Complaint and Jury Demand (ECF No. 82) is the operative complaint with respect to the Mutual-aid Officers.  Strikingly, other than the case caption, each of these officers' names appears only *once* in the entire complaint, all in the same paragraph of the "Parties" section.  (ECF No. 80 at 2, ¶ 2.)  This single paragraph is wholly non-substantive and merely states that the officers were citizens of Colorado when the pertinent events occurred and were acting within the scope of their duties and under color of state law.  (*Id.*)

Each allegation relating to Plaintiff's injuries and the actions that caused them generically applies to each Mutual-aid Officer.  She alleges "Defendants shot toward and among protesters attempting to hide behind umbrellas and barricades."  (*Id.* at 5, ¶ 21.)  And, on information and belief, that "one or more of Defendants shot Plaintiff, causing injury."  (*Id.* at 6, ¶ 24.)  And that the "type and severity of Plaintiff's injury is consistent with being hit with a rubber bullet, which were being deployed by Defendants at the protestors."  (*Id.* at 7, ¶ 27.)  Continuing this pattern, in her claims for relief, she

---

[3] The "Mutual-aid Officers" are Timothy Stegink, Michael Pitton, Anthony Hamilton, Jordan Bybee, Ryan Colley, Anthony Brown, Nathaniel Neidig, Geoffrey Vogel, and Dean Moretti.

repeatedly refers to the "Defendants[']" conduct without remotely explaining who did what to her. (*E.g.*, *id.* at 8, ¶¶ 41 & 44; *id.* at 9, ¶¶ 45–51; *id.* at 10, ¶¶ 52 & 54–56.) These generic allegations are woefully inadequate.

Plaintiff even admits in some of the briefing that she "cannot (at this stage of the litigation) identify the specific officer or officers [who] shot her." (ECF No. 110 at 2; ECF No. 112 at 2.) Nevertheless, she asserts the Mutual-aid Officers' argument that her lack of specificity entitles them to judgment as a matter of law "is without merit." (ECF No. 110 at 2.) In support of this proposition, she cites *Messina v. Mazzeo*, a 1994 case from the Eastern District of New York. 854 F. Supp. 116 (E.D.N.Y. 1994). Plaintiff's reliance on *Messina* is unavailing because it applies a pleading standard that has not been good law for more than fifteen years. *See id.* at 128 (applying *Conley v. Gibson*, 355 U.S. 41 (1957), *abrogated by Twombly*, 550 U.S. at 561–63). In truth, Plaintiff's admission is fatal to her claims against the Mutual-aid Officers.

For these reasons, the Court finds Plaintiff has failed to plausibly allege claims against the Mutual-aid Officers.

**B.     Paul Pazen**

    1.     <u>Personal Participation</u>

In contrast with the Mutual-aid Officers, Pazen's name appears frequently—approximately once per page—in the relevant complaint. (*See* ECF No. 80.) Despite the more frequent invocation of Pazen's name, many of the allegations merely describe Pazen's supervisory role and abstract authority over lower-ranking officers. (*See, e.g.*, *id.* at 6, ¶ 18 ("DPD, though Chief Pazen, opened a command post, and an incident commander was appointed to assume primary command responsibilities and direct officer resources and approve uses of force."); *id.* at 10, ¶ 47 ("Denver's policies,

8

through Chief Pazen's command, authorized mutual-aid agencies, including JCRS, to use less-lethal weapons to control and suppress protesters."); *id.* at 11, ¶ 52 ("Denver and Chief Pazen are responsible for the actions of mutual-aid agencies, including JCRS, that they chose to utilize during the protests because they authorized their less-lethal uses of force against peaceful protesters."); *id.* at 21, ¶ 109 ("Defendants Denver controlled the deployment and actions of the officer who shot Plaintiff through Chief Pazen and incident commanders, which include JCRS officers who were acting as an agent for Denver Defendants at the behest of Chief Pazen.").)

Other allegations concern his role as a final policymaker for Denver. (*See, e.g.*, *id.* at 8–9, ¶ 30 ("Chief Pazen publicly praised DPD and its mutual-aid officers for using 'great' and 'tremendous restraint' during the protests and said the use of less lethal weapons against the protesters was conducted properly."); *id.* at 9, ¶ 31 ("Chief Pazen, as final policymaker[] for Denver, w[as] fully knowledgeable of the actions of the conduct of Denver's officers described above and below and ratified the conduct of Denver's and Denver's mutual-aid agencies', including JCRS's, officers."); *id.* at 11, ¶ 50 ("By failing to train, supervise, reprimand, or stop their officers' uses of force against peaceful protesters, Denver and Chief Pazen acted with deliberate indifference to the constitutional rights of protesters who were acting peacefully."); *id.* at 11 ¶ 51 ("Denver and Chief Pazen made conscious policy choices to violate the constitutional rights of peaceful protesters by publicly ratifying the above and below conduct, and by not requiring officers to utilize body worn cameras or contemporaneously document their less-lethal uses of force.").)

Pazen argues Plaintiff fails to allege he personally participated in or caused any

9

violations of her constitutional rights, instead seeking to improperly impose liability upon him for the actions of his subordinates. (ECF No. 92 at 6.) The Tenth Circuit has acknowledged that "*Iqbal* may have changed the § 1983 supervisory liability landscape." *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016). Regardless, the Tenth Circuit has explained and reaffirmed that

> [w]hatever else can be said about *Iqbal*, . . . § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ." (quoting 42 U.S.C. § 1983).

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010); *see also Keith*, 843 F.3d at 838 (quoting *Dodds*, 614 F.3d at 1199). Thus, Plaintiff "must show an affirmative link between [Pazen] and the constitutional violation." *Keith*, 846 F.3d at 838 (internal quotation marks omitted). Importantly, however, an "affirmative link" does not require "on-the-ground, moment-to-moment control" of subordinates. *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1263–64 (D. Colo. 2010); *accord Dodds*, 614 F.3d at 1199 (citing this passage of *Davis* with approval). Rather,

> "[a] plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."

*Dodds*, 614 F.3d at 1199.

Pazen argues Plaintiff has, at most, alleged facts permitting an inference of his "knowledge and acquiescence—that is, deliberate indifference" to the constitutional

harms Plaintiff suffered. (ECF No. 92 at 5.) In Pazen's view, that is insufficient as a matter of law. (*Id.*) In the Court's view, this is a minor misstatement of the law. It is not that deliberate indifference is *never* enough for a supervisor to be liable; rather, "there's no special rule of liability for supervisors. The test for them is the same as the test for everyone else." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (Gorsuch, J.). Therefore, Plaintiff must plead sufficient facts to plausibly allege Pazen had the requisite state of mind for each constitutional violation asserted, and the proper state of mind can vary from claim to claim. While Pazen casts these arguments as relating to his personal participation, it is clear to the Court that they fit more neatly into the mental state requirement.

        a.    *First Amendment: Content and Viewpoint Discrimination*

Though not stated as such, Plaintiff's First Amendment claim against Pazen[4] is an as-applied challenge to Denver's curfew. (*See* ECF No. 80 at 6, ¶ 20 ("Defendants, through Denver'[s] and Chief Pazen's command, enforced this curfew only against protesters exercising their first amendment rights to engage in protest activity, with only a few exceptions of persons being arrested for curfew while not engaged in protest activity.") United States Chief District Judge Philip A. Brimmer has found that an arrest can constitute content and viewpoint discrimination when the law enforcement officer is motivated by content or viewpoint of the plaintiff's speech. *Irizarry v. City and Cnty. of Denver*, 2023 WL 2528782, at *9 (D. Colo. Mar. 15, 2023). Judge Brimmer has applied this approach narrowly to arrests. *See Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1065 (D. Colo. 2021) ("The Court finds *Weise* [*v. Colorado Springs*, 421 F.

---

[4] Plaintiff states two First Amendment claims against the Mutual-aid Officers but only one against Pazen. (*Compare* ECF No. 80 at 21–25, *with* ECF No. 82 at 8–10.)

Supp. 3d 1019, 1039 (D. Colo. 2019)] distinguishable because the plaintiff in *Weise* was not arrested."). However, the logic of *Logsdon v. Hains*, 492 F.3d 334, 346 (6th Cir. 2007), is not necessarily so limited. In *Logsdon*, the court concluded that the plaintiff's arrests and removals from a public forum interfered with his protected speech rights and constituted a time, place, and manner restriction. *Id.* at 345–46. Further, because the arrests were motivated by the content of his speech, as applied to him, they were content-based restrictions on his speech. *Id.* at 346.

This is precisely what Plaintiff alleges. Though the curfew was content and viewpoint neutral on its face, it was selectively enforced against people protesting police brutality because of the content and viewpoint of their speech. (*See* ECF No. 80 at 22, ¶ 120.) Of course, rather than alleging she was arrested, Plaintiff alleges her constitutionally protected protest activity was interrupted when law enforcement dispersed protesters using less-lethal munitions. (*Id.* at 6–7, ¶¶ 23–24.) In short, like someone who is arrested for the content of their speech, Plaintiff alleges she was forcibly removed from a public forum (the street) *because of* the content of her speech.

But this discussion merely raises the operative question: Has Plaintiff plausibly pleaded that *Pazen* was motivated by the content or viewpoint of Plaintiff's speech in implementing the policies discussed above? In the Court's view, she has not. Plaintiff repeatedly relies upon Pazen's knowledge, awareness, indifference, and ratification of various conduct; however, she never alleges that he was *motivated by* the content or viewpoint of Plaintiff's speech to such that he applied the curfew selectively against her. Therefore, Plaintiff has failed to state a First Amendment claim against Pazen.

   b.  *Fourteenth Amendment: Excessive Force*

"Force inspired by malice or by unwise, excessive zeal amounting to an abuse of

12

official power that shocks the conscience may be redressed under the Fourteenth Amendment." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (cleaned up); *accord Est. of Booker v. Gomez*, 745 F.3d 405, 423 (10th Cir. 2014). While Plaintiff parrots the relevant standard, the Court gives no weight to this conclusory assertion of a legal conclusion, which does not even distinguish between the various defendants. (ECF No. 80 at 29, ¶ 169 ("Defendants acted with malice and/or excessive zeal amounting to an abuse of power.") Therefore, Plaintiff has failed to state a Fourteenth Amendment excessive force claim against Pazen.

c. *Fourth Amendment: Excessive Force*

Fourth Amendment excessive force claims apply an objective reasonableness standard "without regard to [the defendant's] underlying intent or motivation." *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012). Therefore, the Court finds Plaintiff has adequately pleaded that Pazen had the relevant mental state. This leaves the final element identified in *Dodds*: causation. Here, the Court must carefully focus on whether the *policies* Pazen specifically "create[d], promulgate[d], implement[ed], or in some other way possesse[d] responsibility for the continued operation of" caused Plaintiff's injury. *Dodds*, 614 F.3d at 1199. Plaintiff alleges that Pazen "opened a command post" to address protest activity (ECF No. 80 at 6, ¶ 18), "command[ed]" the selective enforcement of the curfew (*id.* at 6, ¶ 20), "publicly praised" law enforcement officers for their "tremendous restraint" (*id.* at 7, ¶¶ 30), and authorized the use of less-lethal weapons "to control and suppress protesters" through his "command" (*id.* at 10, ¶ 47). While a close call, in the Court's view these allegations are just enough to plausibly allege that policies implemented by Pazen caused Plaintiff's injuries.

13

2. <u>Qualified Immunity</u>

The Court has dismissed all claims against the Individual Defendants other than the Fourth Amendment excessive force claim against Pazen; therefore, it only considers qualified immunity with respect to that claim. Plaintiff brings a supervisory-liability theory, and the Court has already concluded she has plausibly alleged an affirmative link between Pazen's personal actions and the use of force that injured her. *See supra*, Part III.B.1. Therefore, the relevant question is whether the use of force caused by Pazen's policy directives violated clearly established law. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1291–92 (10th Cir. 2008)

a. *Constitutional Violation*

Courts in the Tenth Circuit "analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights under the 'objective reasonableness' standard of the Fourth Amendment." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005). "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Id.* "When measuring the reasonableness of the force used, [the Court] must consider, among other things, 'the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest.'" *Buck*, 549 F.3d at 1288 (quoting *Marquez*, 399 F.3d at 1220).

With these standards in mind, the Court easily finds Plaintiff has pleaded an excessive force claim. Plaintiff implicitly acknowledges that she violated the curfew, having been on Colfax Avenue at "around 8:30 p.m." on May 31, 2020, when an 8:00

14

p.m. curfew was in place.  (ECF No. 80 at 6, ¶ 16 & 16, ¶ 86.)  While she does not explicitly plead that violation of the curfew was a misdemeanor, the Court finds that to be a reasonable inference.[5]  She also repeatedly describes herself and other protesters as acting "peacefully" and in a nonthreatening manner.  (*E.g.*, *id.* at 7, ¶¶ 24, 27.)  And there is no indication in the complaint that she (or others) resisted or attempted to evade arrest.

          b.    *Clearly Established*

Plaintiff relies on two cases to support her assertion that the law was clearly established in 2020: *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) and *Buck*.  In *Fogarty*, the Tenth Circuit explained that "a reasonable officer would have been on notice that the *Graham* inquiry applies to the use of [less-lethal munitions] just as with any other type of pain-inflicting compliance technique."  523 F.3d at 1161.  It further explained that because each *Graham* factor favored the plaintiff—that is, the plaintiff was a non-violent petty-misdemeanant who was neither resisting nor evading arrest—the law was clearly established that use of less-lethal munitions against him was unlawful.  *Id.* at 1162.  In *Buck*, the Tenth Circuit employed the same reasoning to find another member of the same protest had alleged a clearly established constitutional violation.  549 F.3d at 1274, 1291 (finding a violation of clearly established law when "each factor in *Graham* counseled against the use of a large amount of force").

Accordingly, the Court finds Pazen is not entitled to qualified immunity with

---

[5] Further, the Court takes judicial notice of Mayor Hancock's May 30, 2020, Emergency Regulation imposing the curfew, declaring violation "punishable by a fine not to exceed $999.00 or imprisonment for not more than 300 days."  Emergency Curfew (May 30, 2020), https://www.denvergov.org/content/dam/denvergov/Portals/428/documents/Denver_Curfew_Order_05302020.pdf.

respect to Plaintiff's Fourth Amendment excessive force claim.

    c. *Dismissal with Prejudice*

Because Plaintiff has already made three unsuccessful attempts to plead plausible claims against Pazen, the Court concludes further amendment would be futile. Therefore, the Court dismisses Plaintiff's First and Fourteenth Amendment claims against Pazen with prejudice. *See Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court ORDERS as follows:

1. Defendants Timothy Stegink, Michael Pitton, Anthony Hamilton, Jordan Bybee, and Ryan Colley's Motion to Dismiss Complaint and Jury Demand (ECF No. 83) is GRANTED;

2. Defendants Nathaniel Neidig, Geoffrey Vogel, and Dean Moretti's Motion to Dismiss (ECF No. 97) is GRANTED;

3. Defendant Anthony Brown's Motion to Dismiss Complaint and Jury Demand (ECF No. 99) is GRANTED;

4. Plaintiff's claims against Timothy Stegink, Michael Pitton, Anthony Hamilton, Jordan Bybee, Ryan Colley, Nathaniel Neidig, Geoffrey Vogel, Dean Moretti, and Anthony Brown, in their individual capacities, are DISMISSED WITHOUT PREJUDICE.

5. Plaintiff is GRANTED LEAVE to file an Amended Complaint in the lead case of this consolidated litigation, Civil Action No. 22-cv-0608-WJM-KAS, by **no later than October 20, 2023**. This leave is limited SOLELY to further amending those claims dismissed **without prejudice** by the terms

of this Order;

6. Defendant Pazen's Motion to Dismiss (ECF No. 92) is GRANTED IN PART and DENIED IN PART;

7. Plaintiff's First and Fourteenth Amendment claims against Paul Pazen, given that she has had four attempts to plausibly plead them, are DISMISSED WITH PREJUDICE;

8. Pazen will be entitled to judgment in his favor and against Plaintiff on Plaintiff's First and Fourteenth Amendment claims at such time as the Clerk enters final judgment on all claims of all parties in this consolidated action; and

9. The stay (ECF No. 127) entered by former U.S. Magistrate Judge Kristen L. Mix is LIFTED, and Plaintiff's Fourth Amendment claim against Pazen remains pending in this consolidated action.

Dated this 12th day of September, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge