IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0608-WJM-KAS
*Consolidated with Civil Action No. 22-cv-1358-WJM-KAS*

SUZY DENNIS,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
PAUL PAZEN, in his individual capacity,
CITY OF ARVADA,
CITY OF GOLDEN,
JOHN AND JANE DOES 1–5, in their individual capacities,
JEFF SHRADER, in his official capacity,
ANTHONY BROWN, in his individual capacity,
GEOFFREY VOGEL, in his individual capacity,
NATHANIEL NEDIG,[1] in his individual capacity,
TIMOTHY STEGINK, in his individual capacity,
MICHAEL PITTON, in his individual capacity,
ANTHONY HAMILTON, in his individual capacity,
JORDAN BYBEE, in his individual capacity,
RYAN COLLEY, in his individual capacity, and
DEAN MORETTI, in his individual capacity,

    Defendants.

## ORDER GRANTING CITY OF ARVADA'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Suzy Dennis sues three Colorado municipalities, including Defendant City of Arvada ("Arvada"), and numerous law enforcement officers for alleged violations of her First, Fourth, and Fourteenth Amendment rights. (ECF Nos. 80, 82.) Before the

---

[1] The Court observes that Nathaniel Nedig's last name is properly spelled "Neidig." (ECF No. 97 at 1.)

Court is Arvada's Motion for Judgment on the Pleadings ("Motion").  (ECF No. 145.)  For the following reasons, the Motion is granted.

## I. JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss.  *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009).  Therefore, in ruling on a motion for judgment on the pleadings, the Court looks to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief—that is, a complaint must include "enough facts to state a claim for relief that is plausible on its face."  *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  The Court accepts as true the well-pleaded factual allegations of the non-moving party and draws all reasonable inferences in its favor.  *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).  In ruling on a motion for judgment on the pleadings, the Court may consider the complaint, any material that is attached to the complaint, and the answer.  *See Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

## II. BACKGROUND[2]

In the summer of 2020, and in the wake of the murder of George Floyd, millions of Americans gathered in cities across the country to protest police brutality.  (ECF No.

---

[2] The following factual summary is drawn from the Third Amended Complaint (ECF No. 80), except where otherwise stated.  The Court assumes the allegations therein to be true for the purposes of deciding the Motion.  *See Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

80 at 4–5, ¶¶ 12–14.)  On May 28, 2020, protesters gathered in downtown Denver and continued their demonstration for several following days and nights.  (*Id.* at 5, ¶ 14.)  In response, Denver instituted a city-wide curfew order from May 30 through June 5, 2020.  (*Id.* at 5, ¶16.)  The curfew prohibited all persons from "using, standing, sitting, traveling, or being present on any public street or in any public place, including for the purpose of travel," with limited exceptions.  (*Id.* at 5–6, ¶ 17.)

In addition to the curfew, Paul Pazen, then-Chief of the Denver Police Department, opened a "command post" and appointed an incident commander to direct officer resources and approve use of force.  (*Id.* at 6, ¶ 18.)  This curfew was selectively enforced against protesters with the assistance of mutual-aid officers from multiple municipalities and counties in the Denver metropolitan area.  (*Id.* at 6, ¶¶ 19–21.)  As part of their protest crowd-control efforts, Denver and mutual-aid officers employed "less-lethal" munitions against peaceful protesters indiscriminately and without provocation.  (*Id.* at 6–7, ¶¶ 23–27.)  Despite many protestors having already been injured by these less-lethal munitions, on May 29, 2020, then-Mayor Michael Hancock and Pazen publicly praised Denver and mutual-aid officers for their "great" and "tremendous restraint" in use of force against protesters.  (*Id.* at 7–8, ¶ 30.)

On May 31, 2020, Dennis was walking down Colfax Avenue during the hours in which the curfew was in effect when she came across an active but peaceful and non-violent protest.  (*Id.* at 18, ¶¶ 94–95.)  She then decided to stand with and film the protesters.  (*Id.* at 18, ¶ 95.)  Within minutes of Dennis joining the protest, law enforcement officers began spraying tear gas, throwing flashbang grenades, and shooting rubber bullets at the protestors, including Dennis.  (*Id.* at 18, ¶ 96.)  Suddenly

3

and without warning, Dennis's hand was hit by an unknown projectile that knocked her phone out of her hand, injuring her right index finger and leaving bone visibly exposed. (*Id.* at 18, ¶ 97.) At first, Dennis believed her finger had been "shot clean off." (*Id.* at 18, ¶ 98.) Dennis's injury is "consistent with being hit with a rubber bullet." (*Id.* at 18, ¶ 101.)

### III. ANALYSIS

A local government unit can be liable for damages under 42 U.S.C. § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 694 (1978). The Supreme Court has thus "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," thereby "ensur[ing] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," rather than holding the municipality liable simply because it employed a constitutional wrongdoer. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997).

The relevant policy or custom can take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so

> long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted; alterations incorporated).  But, whatever species of policy or custom is alleged,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan Cnty.*, 520 U.S. at 404 (emphasis in original).

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770–71 (10th Cir. 2013) (quoting *Bryan Cnty.*, 520 U.S. at 407).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct.  In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]

*Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).  The Tenth Circuit has explained that "the prevailing state-of-mind standard for a municipality is deliberate indifference regardless of the nature of the underlying constitutional

5

violation." *Id.* at 770 n.5 (citing Martin A. Schwartz, Section 1983 Litigation Claims & Defenses at § 6.02[C] (2013) ("Since the decision in [*City of Canton v. Harris*, 489 U.S. 378, 389 (1989)] [adopted deliberate indifference for training claims], deliberate indifference has become the prevailing standard for other types of municipal liability claims as well. . . . [W]hen a § 1983 claimant seeks to impose municipal liability she must normally show deliberate indifference."); Schwartz § 7.07 ("The deliberate indifference standard has . . . played a pervasive role in the law of § 1983 municipal liability.")).

### A.   The Court's Order Dismissing Plaintiff's Claims Against Municipalities

In September 2023, the Court granted co-defendants City of Golden ("Golden"), City of Denver ("Denver"), and Jefferson County Sheriff Jeff Shrader's (collectively, "municipal defendants") motions to dismiss with prejudice. (ECF No. 138 at 14.) Initially, the Court acknowledged that, to successfully plead a *Monell* violation, Dennis must assert: (1) the existence of a policy or custom; (2) a causal link between the policy or custom and the constitutional injury; and (3) the municipality's deliberate indifference. (*Id.* at 6–7.) The Court concluded as a threshold matter that, regardless of which liability theory Dennis asserted, she "must show each municipality acted with deliberate indifference." (*Id.* at 6–8 (citing, *e.g., Finch v. Rapp*, 38 F.4th 1234 (10th Cir. 2022).)

Starting with Golden's Motion, the Court found that Dennis failed to allege deliberate indifference with respect to a formal policy, informal custom, or failure to train. (*Id.* at 8.) As to Golden's alleged failure to train,[3] the Court found that, even if Dennis

---

[3] The Court focused its analysis on Golden's alleged failure to train because Dennis "fail[ed] to make any argument whatsoever on how the allegations in the Third Amended Complaint plausibly allege[d] Golden's deliberate indifference with respect to other theories."

6

plausibly alleged notice by way of a pattern of tortious conduct by the mutual-aid officers or because her injury was a highly predictable and plainly obviously consequence of Golden's failure to train and supervise its officers, her complaint "utterly lack[ed]" allegations of deliberate indifference.  (*Id.* at 9.)  Indeed, the Court found that Dennis's "allegation that similar injuries had occurred over the preceding days, standing alone, cannot meet" the high deliberate indifference standard.  (*Id.*)

The Court found Dennis's allegations and arguments as to Shrader to be "similarly sparse."  (*Id.* at 10.)  As to Shrader's alleged deliberate indifference, Dennis averred that he had an "overt policy of not requiring [body-warn cameras] to be on and allowed delayed use of force reporting," which she argued "directly and deliberately led to officers' Constitutional violations because they believed they would not be held accountable for their actions."  (*Id.*)  But the Court found that, at most, these allegations merely suggested "that Shrader was on notice that certain practices improve police accountability."  That is, the Court reasoned, "[n]one of the allegations related to body-worn cameras or use of force reports have anything to say about Shrader's deliberate or conscious disregard for the consequences of these policies."  (*Id.* at 11.)

Finally, the Court considered Dennis's allegations against Denver, which the Court described as containing "by far the greatest number of specific allegations."  (*Id.*)  Still, the Court observed that her "argument on deliberate indifference is a near carbon copy of the confused argument [she] made with respect to Golden."  (*Id.* at 12.)  In other words, Dennis focused her deliberate indifference argument on Denver's alleged failure to train its officers.  (*Id.*)  On this point, Dennis alleged that "Denver did not conduct joint

---

(ECF No. 138 at 8.)

training exercises with mutual-aid officers prior to responding to the protests"; "Denver did not require officers to prepare use of force reports until after a lawsuit was filed"; "Denver did not train (or require mutual-aid officers to have been trained) to keep their body-worn cameras on"; and "Denver and mutual-aid officers developed a pattern of using less-lethal munitions on peaceful protestors over the course of several days prior to May 31, 2020, when [she] sustained her injuries." (*Id.* at 13.)

The Court found that "[t]hese allegations are insufficient to show deliberate indifference to inadequate training." (*Id.*) The Court reiterated that "[a] handful of days is simply not a long enough pattern of tortious conduct to infer Denver's knowledge." (*Id.*) Moreover, the Court continued, Dennis did "nothing to support" her claim that the alleged violation of her constitutional rights was a highly predictable and plainly obvious consequence of Denver's failure to train and supervise its officers' tactics. (*Id.* at 14.) As a result, the Court dismissed with prejudice Dennis's claims against Golden, Shrader, and Denver. (*Id.*)

## B.     Arvada's Motion for Judgment on the Pleadings

Unlike the other municipal defendants, Arvada did not move to dismiss Dennis's claims but instead filed an answer to her Third Amended Complaint. (*Id.* at 2 n.2.) A month after the Court's dismissal order, however, Arvada moved for judgment on the pleadings. (ECF No. 145.) Arvada contends that "[t]he three claims for relief asserted against [it] were also asserted against [Golden] and [Shrader]" and that "[t]he Court's reasoning and conclusions in the Order (ECF No. 138) also apply to Arvada." (*Id.* at 2.)

Dennis insists that her Third Amended Complaint plausibly alleges Arvada's deliberate indifference, but she does not persuasively explain how her present arguments differ from those the Court considered with respect to the other municipal

8

defendants.  Dennis asserts:

- "Arvada knowingly and deliberately let its officers unlawfully shoot unarmed civilians for three days *before* they shot [her].  This demonstrates Arvada's deliberate indifference towards the violent actions of it officers during this incident."  (ECF No. 161 at 3) (emphasis in original).

- "Arvada's *deliberate* policy to not use body worn cameras ("BWC") during the protests emboldened the officers by implying that they would not be held accountable for their actions."  (*Id.* at 4) (emphasis in original).

- "By failing to properly train officers on proper crowd control and the use of kinetic impact projectile munitions, combined with its deliberate policy to not use BWC, it was highly predictable and substantially certain that a constitutional violation would result when Arvada sent its officers into the protest."  (*Id.*)

- "On May 31, 2020, an Arvada officer shot Plaintiff with a kinetic impact projectile while she was in a crowd of peaceful protesters.  Arvada was deliberately indifferent to its officer's violent actions that led to Plaintiff's serious and debilitating injury."  (*Id.* at 5.)

Dennis argues that "Arvada's failure to train and supervise its officers in crowd control and KIP deployment, in combination with its policy of not requiring BWC and gaps in use of force reporting, directly led to the deprivation of [her] Constitutional rights under the First, Fourth, and Fourteenth Amendments."  (*Id.* at 8.)  She continues that she "has further alleged that Arvada, as the final policymaker, ratified its officers' violent actions against civilians in the three days before they shot [her]."  (*Id.*)

Although Dennis asks the Court to "not blindly apply the same rational[e] as it did in its previous Order for Golden and Shrader" and to "allow [her] to make fresh arguments," in the Court's view, Dennis has, for the most part, not made new arguments. (*Id.* at 7.) Instead, she largely repeats the same points she advanced in her responses to the other municipal defendants' dismissal motions. (*See generally* ECF Nos. 102, 104.) In particular, the bulk of her response posits that she alleged Arvada's deliberate indifference by pointing to its (1) insufficient training and supervision, (2) failure to require BWC in combination with significant gaps in reporting use of force, and (3) decision to ratify its officers' actions by continuing to allow them to assault protestors "in the three days preceding the assault on [Dennis]." (ECF No. 161 at 7–9, 12–15.)

But the Court considered—and rejected—these same arguments point by point in its Order dismissing Dennis's claims against Golden, Shrader, and Denver. The Court need not rehash that analysis here. Suffice it to say, while Dennis's allegations may pertain to the notice[4] and causation components of her claims, they do not go towards Arvada's alleged deliberate indifference to its policies and customs. (ECF No. 138 at 9 (observing an "utter lack" of allegations as to deliberate indifference).) Consequently, the Court sees no basis not to extend the reasoning of its earlier Order to the matter here.

---

[4] To be clear, the Court noted that three days of alleged violations was not enough to provide notice. (ECF No. 138 at 13 ("A handful of days is simply not a long enough pattern of tortious conduct to infer Denver's knowledge.").) *See Cole v. Does*, 571 F. Supp. 3d 1033, 1046 (D. Minn. 2021) ("A single incident of excessive force occurring during the chaos following the death of George Floyd did not give Dwyer or Salto notice of a pattern of unconstitutional acts that they had a duty (or perhaps even an opportunity) to remedy.").

Lastly, however, the Court identifies a revamped argument raised in Dennis's response that she did not flesh out in her earlier papers. In arguing that Arvada adopted its policies and customs with deliberate indifference, she maintains that her alleged injury was a "highly predictable" and "plainly obvious consequence" under the "single-incident failure-to-train" standard.[5] (ECF No. 161 at 12–13.)

While the Supreme Court has held that a deliberate indifference claim may be based on a single incident when the need for training "can be said to be so obvious, that failure to do so could probably be characterized as deliberate indifference to constitutional rights," the Supreme Court "has reaffirmed single-incident failure-to-train municipal liability in a narrow range of circumstances[] [where] a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Valdez v. Macdonald*, 66 F.4th 796, 815 (10th Cir. 2023) (citations omitted) (cleaned up).

Applying these principles, the Tenth Circuit has reversed summary judgment in cases where the constitutional violations were a "highly predictable consequence of failure to train officers to handle recurring situations with an obvious potential for such a violation." *See, e.g., Allen v. Muskogee*, 119 F.3d 837, 845 (10th Cir. 1997) (reversing summary judgment where plaintiff alleged failure to train in the common scenario where officers needed to approach emotionally disturbed persons who were armed and suicidal); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1320 (10th Cir. 2002) (same, but

---

[5] The Court noted in its earlier Order that, although Dennis asserted that the alleged constitutional violations here were a highly predictable and plainly obvious consequence of the municipal defendants' failure to train, thereby invoking the single-incident failure-to-train standard, "she d[id] nothing to support this claim either via attorney argument or citation to facts alleged in the Third Amended Complaint." (ECF No. 138 at 14.)

where county failed to train its officers on booking procedures for individuals with certain common mental disorders); *Lance v. Morris*, 985 F.3d 787, 900 (10th Cir. 2021) (same, but where county had failed to train jail guards on how to determine the immediacy of medical complaints).

At the outset, the Court notes, as it did in its earlier Order, that the circumstances in this case are quite dissimilar to those the Tenth Circuit has found to fall under the single-incident failure-to-train standard. (*See* ECF No. 138 at 14) ("Therefore, this action stands in stark contrast with cases where the Tenth Circuit has found notice on the basis that constitutional violations were the highly predictable and plainly obvious consequence of municipal policy or custom."). The Court stands by that conclusion here.

Notably, however, at least one other district court (albeit, in a different jurisdiction) has held that injuries arising out of the George Floyd protests can provide notice to a municipality under the single-incident failure-to-train standard. *See Ratlieff v. City of Fort Lauderdale*, 2024 WL 4039849, at *45 (S.D. Fla. Sep. 4, 2021) (considering a civil rights case arising out of injuries sustained at a George Floyd protest and finding that "[t]he instant record supports notice to the City based upon a theory of single-incident liability as 'the risk of constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the [C]ity to fail to prepare officers for it'") (quoting *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020))); *see also Williams v. City of Columbus*, 2024 WL 111674, at *19 n.21 (S.D. Ohio Jan. 10, 2024) (denying summary judgment where the plaintiff, who alleged injuries stemming from a George Floyd protest, presented evidence from which "a reasonable jury could find City of

Columbus responsible for Plaintiff Davis's constitutional injuries under failure to train and/or supervise through a pattern of similar constitutional violations *or a theory of single-incident liability*") (emphasis added).

Nevertheless, even if the Court were to find notice by Arvada for its failure to properly train its officers in this case, "[n]otice alone is insufficient to establish deliberate indifference." *Yancey v. Tillman*, 696 F. Supp. 3d 1310, 1327–28 (N.D. Ga. 2023). Beyond notice, a plaintiff must also show that the municipality made a "deliberate choice not to train its employees." *Id.*; *Favors v. City of Atlanta*, 849 F. App'x 813, 817–22 (11th Cir. 2021) ("[O]ur next task is to determine whether the municipality made a deliberate choice not to take any action despite that notice."). In the single-incident context, the Tenth Circuit has instructed that deliberate indifference is established where "(i) the municipality's policymakers know to a moral certainty that their employees will confront a given situation; (ii) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult; and (iii) the wrong choice will frequently cause the deprivation of a citizen's constitutional rights." *Valdez*, 66 F.4th at 817 (quoting *Lance*, 985 F.3d at 802) (alterations and internal quotation marks omitted); *see also Est. of Finn by & through Schwartz v. City & Cnty. of Denver*, 2023 WL 8355966, at *6 (D. Colo. Dec. 1, 2023).

Here, Dennis alleges that Arvada knew or should have known that its officers would encounter situations like those in this case.[6]  (*See* ECF No. 80 at 13 (asserting

---

[6] Consistent with Dennis's position, the *Ratlieff* district court found notice under similar facts, explaining that, "[g]iven that FLPD is a relatively large police department located in a major metropolitan area, crowd-control with less-lethal weapons presents precisely the kind of highly predictable scenario likely to reoccur . . . ." 2024 WL 4039849, at *44; *see also id.* ("Here, policymakers for a city of nearly 200,000 people have armed their police with military-grade less-lethal weapons with the high likelihood that they will be regularly required to manage

13

that Arvada approved its actions "despite knowing that a large number of peaceful protesters would be standing in the way of any misfires . . . .").)  But she does not allege facts pertaining to the other elements outlined in *Valdez*; instead, she merely offers argument in her response, asserting that "it is patently obvious that a chaotic protest situation will present officers with many difficult choices."  (ECF No. 161 at 14.)  Without more, Dennis's single-incident failure-to-train claim falls short on the deliberate indifference requirement.  *Teetz v. Bd. of Cnty. Comm's of Sedgwick Cnty., Kansas*, 2023 WL 7698030, at *8 (D. Kan. Nov. 15, 2023) ("Thus, even if 'more or better training' would have prevented Lofton's death, 'this fact alone does not demonstrate deliberate indifference.'") (citation omitted).

Hence, Dennis has not plausibly alleged that the circumstances in this case fall within the "narrow range of circumstances" where Arvada's alleged constitutional violations were a "highly predictable" or "patently obvious" consequence of its failure to properly train its employees.  *See Bd. of Cnty. Comm'rs*, 520 U.S. at 409; *see also Rusanowsky v. City of Dallas*, 2023 WL 2728722, at *7 (N.D. Tex. Mar. 30, 2023) (applying Fifth Circuit precedent concluding that "the single-incident exception is typically reserved for cases where an employee received no training at all" and rejecting plaintiff's civil rights claim stemming from George Floyd protest); *Johnson v. City of San Jose*, 591 F. Supp. 3d 649, 667 (N.D. Cal. 2022) (rejecting single-incident claim stemming from George Floyd protests where plaintiff acknowledged that the officers had received at least some training using less lethal weapons).

---

crowds—including individuals exercising their constitutionally protected speech and assembly rights.").

For all these reasons, consistent with its earlier Order, the Court finds that Dennis has failed to allege deliberate indifference by Arvada, and thus perceives no plausible *Monell* claim.

### C.     Dismissal with Prejudice

Because Dennis has already made four unsuccessful attempts to plead plausible claims, the Court concludes that further amendment would be futile. The Court therefore dismisses the claims against Arvada with prejudice. *See Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

### IV. CONCLUSION

Accordingly, for the reasons stated above, the Court ORDERS as follows:

1. Arvada's Motion for Judgment on the Pleadings (ECF No. 145) is GRANTED;

2. The Third Amended Complaint (ECF No. 80) is DISMISSED WITH PREJUDICE as to Arvada; and

3. Arvada will be entitled to judgment in its favor and against Dennis at such time as the Clerk enters final judgment on all claims of all parties in this consolidated action.

Dated this 3rd day of October, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge